UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

HOWARD ALAN McCOWAN,

Plaintiff,

v.

JANET RENO, J.W. TIPPY, CHAPLAIN LONGERNECKER, D.R. BENSON, MARK MILLER, and M.R. ISAACSON,

Defendants.

Civil No. 00-1865 (DWF/JMM)

REPORT AND RECOMMENDATION

Plaintiff, a prisoner at the Federal Correctional Institution at Memphis, Tennessee, has filed a Complaint seeking relief for alleged violations of his federal constitutional rights. The matter is presently before the undersigned Magistrate Judge for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.[1] For the reasons discussed below, the Court finds that Plaintiff's Complaint fails to state any claim on which relief can be granted. It will therefore be recommended that this action be summarily dismissed pursuant to § 1915A(b).

[1] Plaintiff did not tender the required filing fee with his complaint, but instead filed an application seeking leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) By order dated September 6, 2000, (Docket No. 3), the Court advised Plaintiff that his IFP application would not be addressed, and his action could not proceed, unless he paid the initial partial filing fee required by 28 U.S.C. § 1915(b)(1). Plaintiff has now paid his initial partial filing fee, (Docket No. 6), and the matter is therefore ripe for initial screening pursuant to § 1915A.

FILED OCT 25 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

## I. BACKGROUND

This action is based on events that allegedly occurred in April 1998, while Plaintiff was incarcerated at the Federal Correctional Institution in Waseca, Minnesota, ("FCI-Waseca"). Plaintiff alleges that on April 15, 1998, he became "involved in a disagreement" with Defendant Longernecker, a chaplain at FCI-Waseca. He further alleges that "[a]s a result of this disagreement... [he] was placed in Administrative Detention for (92) days for allegedly encouraging others to incite a riot." Plaintiff was first placed in detention at the Waseca County Jail, and he was then moved to the Federal Correctional Institution in Sandstone, Minnesota. He was later transferred to a federal prison in Pekin, Illinois, and from there he went to the prison in Memphis where he is currently confined.

In the present action, Plaintiff is suing Defendant Longernecker and five other Defendants for allegedly violating his federal constitutional rights.[2] He claims that he was denied due process, because he never received any disciplinary hearing before being placed in detention and transferred away from FCI-Waseca. He contends that he is innocent of any wrongdoing, and that he could have proven as much, if he had ever been given a fair hearing. In his prayer for relief, Plaintiff demands $500,000 in compensatory damages and $10,000,000 in punitive damages from each of the named Defendants.

---

[2] One of the named Defendants is U.S. Attorney General Janet Reno. In a motion filed on August 29, 2000, (Docket No. 4), Plaintiff requests that his claims against Defendant Reno be stricken. In light of the Court's determination that Plaintiff has failed to state any actionable claim against any of the named Defendants, (including Defendant Reno), Plaintiff's "motion to strike" will simply be denied as moot.

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from governmental employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1). In this case, the Court finds that Plaintiff has not stated any legally cognizable claim against any of the named Defendants. It will therefore be recommended that the action be summarily dismissed, in its entirety, pursuant to § 1915A(b).

Although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the Complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). See also, Martin v. Sargent, 780 F.2d 1334, 1337 (1985) ("[a]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions"). Moreover, in a civil rights action, liability occurs only when there is "a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); Speed v. Ramsey County, 954 F.Supp. 1392, 1397 (D.Minn. 1997) (Tunheim, J.) (same). Therefore, in order to state a cognizable

civil rights claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that allegedly violated the plaintiff's federal constitutional rights.

In the Complaint presently before the Court, there are no facts suggesting that any of the Defendants was directly responsible for any violation of Plaintiff's constitutional rights. In fact, none of the named Defendants, except Longernecker, is even mentioned anywhere in the factual allegations of the Complaint. And while the Complaint does mention Defendant Longernecker, it does not describe anything that he did (or failed to do) that could be viewed as a violation of Plaintiff's constitutional rights. The Complaint merely alleges that Plaintiff became involved in a disagreement with Longernecker. It could be inferred that Longernecker reported the disagreement to someone else, and that Plaintiff ultimately was placed in detention and transferred away from FCI-Waseca on the basis of a report by Longernecker, but there are no factual allegations suggesting that Longernecker had any duty to provide any type of hearing for Plaintiff, or that Longernecker himself caused Plaintiff to be placed in detention or transferred.

Thus, even if the facts alleged in the Complaint are all true, Plaintiff has not stated an actionable claim against any of the named Defendants. No actionable claim has been pleaded against Defendant Longernecker, because Plaintiff has alleged only that he had "a disagreement" with Longernecker. No actionable claim has been pleaded against any other Defendant, because no other Defendant is even mentioned in the factual allegations of the Complaint.

Furthermore, even if Plaintiff had pleaded facts showing that one or more of the Defendants was somehow directly and personally responsible for his placement in detention and his prison transfers, his Complaint still would not state an actionable due process claim. To maintain such a claim, a prisoner must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest. "A due process claim is cognizable only if there is a recognized liberty or property interest at stake." Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997). Therefore, Plaintiff cannot maintain a due process claim based on his administrative detention and his prison transfers, unless he has alleged facts showing that he had a constitutionally protected liberty interest in remaining in the general prison population at FCI-Waseca.

An actionable liberty interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown that he has suffered the type of unusual hardship or dramatic departure from ordinary prison life that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). In that case, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he has suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. Our Court of Appeals has explained that, under Sandin, prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996) (emphasis added).

Being placed in administrative detention or segregated confinement for a limited period of time is a fully expectable aspect of prison life. Such occurrences cannot be viewed as an "atypical and significant hardship" for purposes of determining whether a prisoner has been deprived of a constitutionally protected liberty interest. Sandin itself shows that a 30-day term of segregated confinement does not normally constitute the type of "atypical and significant hardship" that implicates a constitutionally protected liberty interest, and the 92-day term of administrative detention at issue in this case is not significantly longer than the 30-day period at issue in Sandin. Indeed, the Eighth Circuit has found that periods of segregated confinement much longer than 92 days do not constitute an atypical and unusual hardship giving rise to a constitutionally protected liberty interest. Howard v. Collins, No. 97-1642 (8th Cir. 1997), 1997 WL 710314 (eight month stint in "ad seg" would not support due process claim); Driscoll v. Youngman, No. 95-4037 (8th Cir. 1997), 1997 WL 581072 (135 days in disciplinary and administrative segregation would not support due process claim).[3] See also Wycoff v. Nichols, 94 F.3d 1187, 1189-90 (8th Cir. 1996) (10 days of disciplinary detention followed by 90 days in a maximum security cell, did not constitute an atypical hardship requiring the protections of due process). Case law from other jurisdictions suggests that segregated confinement for as long as a full year will not support an actionable due process claim. See Wilson v. Harper, 949 F.Supp. 714, 723 (S.D.Iowa 1996) (eleven months in "administrative segregation-type conditions" did not constitute the type of hardship that would support a

---

[3] Although Howard and Driscoll are unpublished opinions, they can properly be relied upon as precedential case law in actions decided within the Eighth Circuit. Anastasoff v. U.S., 223 F.3d 898 (8th Cir. 2000).

due process claim); Stone-Bey v. Barnes, 913 F.Supp. 1226, 1233-34 (N.D.Ind. 1996) (one year in segregated confinement does not implicate a protected liberty interest), vacated on other grounds, 120 F.3d 718 (7th Cir. 1997); Marino v. Klages, 973 F.Supp. 275, 278 (N.D.N.Y. 1997)(noting that "district courts in the Second Circuit have generally found that any SHU [segregated housing unit] confinement under a year in time is not an atypical or significant hardship on prisoners"). Based on Sandin and the relevant case law following it, the Court concludes that Plaintiff's 92-day term of administrative detention does not constitute the type of hardship that would implicate a protected liberty interest.

Nor can Plaintiff's various prison transfers be viewed as an atypical or significant hardship that would implicate a protected liberty interest. Prisoners are frequently moved from one location to another for a variety of reasons; that is a normal part of a prisoner's life. Indeed, it is well-settled that prisoners do not have any protected liberty interest in remaining in any particular institution. Olim v. Wakinekona, 461 U.S. 238, 250 (1983), (prison authorities "may transfer a prisoner 'for whatever reason or for no reason at all'"), quoting Meachum v. Fano, 427 U.S. 215, 228 (1976). Therefore, prisoners are not entitled to the procedural protections of due process before being transferred to a different institution.

Due process need not precede a prison transfer even when a prisoner's new prison home is less comfortable than his old one. Freitas v. Ault, 109 F.3d 1335, 1337 (8th Cir. 1997) (prisoner had no constitutionally protected liberty interest in remaining in a less restrictive prison environment, and he therefore was not entitled to due process before being transferred to a more restrictive institution). See also Callender v. Sioux City

Residential Treatment Facility, 88 F.3d 666, 668-69 (8th Cir. 1996) (prisoner was not entitled to due process before being transferred from a work release facility to far more restrictive housing in a state reformatory); Moorman, 83 F.3d at 971 (due process not required before effecting prisoner's transfer from minimum security facility to maximum security facility); Diaab v. Terry, No. 99-4034 (8th Cir. 2000), 2000 WL 1006648 (per curiam) (unpublished opinion) at *1 ("transfer to administrative segregation and then to a maximum security unit did not violate due process because it 'was not a dramatic departure from the basic conditions of his confinement and thus [did] not constitute the type of atypical, significant deprivation in which a [S]tate might conceivably create a liberty interest'") quoting Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996) (quoting Sandin, 515 U.S. at 486).

Thus, the Court concludes, as a matter of law, that Plaintiff had no liberty interest in remaining in the general prison population at FCI-Waseca. Being placed in administrative detention, and being transferred to other federal prisons, do not constitute the type of hardships contemplated in Sandin. Because Plaintiff has not alleged any facts showing that he was deprived of a constitutionally protected liberty interest, he has not shown that he was entitled to due process. His Complaint therefore fails to state an actionable due process claim.[4]

---

[4] The Court has not overlooked Plaintiff's allegation that he was deprived of certain unidentified "legal materials" for some unspecified period of time during the course of his prison term. (Complaint, [Docket No. 1], pp. 6-7.) With the benefit of liberal construction, this allegation could be viewed as an attempt to state a claim of denial of access to the courts. See Bounds v. Smith, 430 U.S. 817 (1977). No actionable claim of that nature has actually been pleaded, however, because there are no facts suggesting that any of the named Defendants was personally responsible for any alleged deprivation of legal

## III. CONCLUSION

For the reasons discussed above, the Court concludes that this action must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It follows that Plaintiff's application for leave to proceed IFP must also be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $150 filing fee.[5] He has paid only $41.98, so he still owes $108.02. Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2).

In his "Motion For Continuance," (Docket No. 5), Plaintiff asks for additional time to pay his initial partial filing fee. Because Plaintiff has already paid his initial partial filing fee of $41.98, his motion for continuance will be denied as moot.

---

materials. Furthermore, Plaintiff has not alleged sufficient facts showing that he suffered some "actual injury" as a direct result of any such deprivation of legal materials. See Klinger v. Department of Corrections, 107 F.3d 609, 617 (8th Cir. 1997) ("actual injury must be proven in order to prevail on an access-to-courts claim"). He has pleaded only that he did not file a timely supplement to some unidentified certiorari petition that allegedly was pending in the U.S. Supreme Court. That conclusory assertion does not adequately demonstrate an actual injury that could support an access-to-courts claim.

[5] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

Finally, it is recommended that the dismissal of this action count as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. This action be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

2. Plaintiff's "Motion To Strike," (Docket No. 4), and "Motion For Continuance," (Docket No. 5), be **DENIED AS MOOT**;

3. Plaintiff's "Application to Proceed Without Prepayment of Fees," (Docket No. 2), be **DENIED**;

4. Plaintiff be required to pay the unpaid balance of the Court filing fee, namely $108.02, in accordance with 28 U.S.C. § 1915(b)(2); and

5. For purposes of 28 U.S.C. § 1915(g), this action be dismissed on the grounds that it is frivolous, malicious, or fails to state a claim on which relief may be granted.

Dated: October 25, 2000

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before November 9, 2000, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.